UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DIANE M. JOHNSON – MOORE,<br><br>               Petitioner,<br><br>    v.<br><br>CAROLYN W. COLVIN[1],<br>Acting Commissioner of Social Security Administration,<br><br>               Respondent. | Case No. 1:12-CV-00586-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Petitioner Diane M. Johnson – Moore's ("Petitioner") Petition for Review of the Respondent's denial of social security benefits, filed November 28, 2012. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue. Colvin became the Acting Commissioner of Social Security Administration on February 14, 2013.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 16, 2009, alleging disability beginning October 8, 2008, from arthritis, mild degenerative disk disease of the cervical spine, insomnia, depression, anxiety/panic disorder, personality disorder, and substance abuse. The application was denied initially and on reconsideration, and a hearing was held on June 23, 2011, before Administrative Law Judge ("ALJ") Verrell Dethloff. After hearing testimony from Petitioner, ALJ Dethloff issued a decision finding Petitioner not disabled on July 12, 2011. Petitioner timely requested review of the ALJ's decision by the Appeals Council for review on August 10, 2011, which request was denied on September 26, 2012.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Petitioner was born in January of 1967. At the time of Petitioner's alleged onset date, October 2008, Petitioner was 41 years of age. Petitioner has a high school education and two years of college. Petitioner has prior work experience as a receptionist, administrative assistant, beverage server, and residential attendant.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset

date, of October 8, 2008. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's arthritis, mild degenerative disk disease of the cervical spine, insomnia, depression, anxiety/panic disorder, personality disorder, and substance abuse severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically listings 1.02 (major dysfunction of joints or joints), 1.04 (disorders of the spine), 12.04 (affective disorder), 12.06 (anxiety-related disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform her past relevant work as a receptionist and residential attendant. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ determined that Petitioner retained the RFC to perform a reduced range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.976(c). As part of this determination, the ALJ found Petitioner could lift and/or carry twenty-five pounds frequently; could lift and/or carry

fifty pounds occasionally; could sit, stand, and walk six hours out of an eight- hour workday; and could only occasionally crouch, crawl and climb ladders. The ALJ relied on the Medical-Vocational Guidelines in determining Petitioner's RFC and found Petitioner retained the capacity to perform unskilled work at a medium level of demand, and was, therefore, not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant

**MEMORANDUM DECISION AND ORDER - 4**

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as

based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

The issue in this appeal concerns the ALJ's treatment of opinions by an examining psychologist, Dr. David Knopes, who performed an extensive evaluation of Petitioner. An ALJ is not required to accept an opinion of a physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). Further, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Physicians' reports concerning a petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the

**MEMORANDUM DECISION AND ORDER - 6**

ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)). Clear and convincing reasons must also be given to reject an examining doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

Petitioner believes the ALJ erred at step five because the ALJ's RFC findings did not properly account for Dr. Knopes's opinions. Specifically, Petitioner points to the neuropsychological evaluation and assessment of Dr. Knopes, in support of her contention that the ALJ did not properly account for Dr. Knopes's opinion when assessing her RFC. The ALJ concluded that Petitioner retained the RFC to perform a reduced range of medium work including lifting and/or carrying up to fifty pounds, sitting, standing, and walking for the majority of an eight-hour workday. The ALJ further determined Petitioner could perform simple and some complex tasks and should have limited contact with the public. Petitioner relies on three aspects of Dr. Knopes's opinion in her contention that the ALJ erred. The Court will address each in turn below.

1. **Visual Motor Component**

First, Dr. Knopes observed that Petitioner "is expected to be able to demonstrate success on tasks that have a strong visual motor component to their learning and

application. The heavy dominance of visual intellectual performances suggests good *benefit* from modeling, job shadowing, and learning from example." (Dkt. 8 at 461, 468-469.) (emphasis added). The ALJ noted Dr. Knopes found Petitioner could work in jobs requiring a strong visual motor component to their learning and application and Petitioner could have problems performing in jobs requiring multitasking. (Dkt. 8 at 34.)

Petitioner asserts, however, that Dr. Knopes opined Petitioner "will *require* modeling, job shadowing, and learning from example." (Dkt. 15 at 5.) (emphasis added). But, Dr. Knopes did not suggest Petitioner *required* modeling, job shadowing, and learning from example, only that Petitioner would *benefit* from such tools because Petitioner demonstrated success with tasks having visual motor components. Petitioner improperly characterizes the record and Dr. Knopes's opinion. Thus, modeling, job shadowing, and learning from example are neither a diagnosis nor a statement of Petitioner's functional capacity but rather a recommendation. Therefore, the ALJ did not err by excluding this recommendation from the RFC.

    2.    **Contact with the Public**

Second, Dr. Knopes opined that Petitioner's "auditory attention and concentration were demonstrated as highly intermittent, raising some concerns of the effectiveness of learning from standard lecture formats, especially in environments that involve distraction." (Dkt. 8 at 469.) Petitioner asserts Dr. Knopes's opinion was not accounted for in the RFC determination. This assertion is incorrect. The ALJ did consider Dr. Knopes's opinion when he concluded, "Petitioner could perform simple tasks and some

**MEMORANDUM DECISION AND ORDER - 8**

complex tasks and should have limited contact with the public." (Dkt. 8 at 24.) Petitioner's limitation to performing simple tasks would not require learning from standard lecture formats, and limited contact with the public would address the concern for distracting environments.

Furthermore, other evidence in the record substantially supports the ALJ's RFC analysis, and is in accord with Dr. Knopes's opinion. Specifically, Dr. Nicole Seymanski, who examined Petitioner in January 2011, determined that Petitioner's ability to relate to the public was limited. (Dkt. 8 at 32.) Dr. Seymanski further opined Petitioner had difficulty being around others and that, "despite the claimant's estimated IQ score falling in the below-average to average range, she appeared capable of performing simple, routine tasks." (Dkt. 8 at 32.) Additionally, Dr. William Lysak determined that Petitioner "could complete simple and complex tasks that did not require prolonged concentration and she would require limited public contact due to her panic attack symptoms." (Dkt. 8 at 34.) The ALJ adequately considered and addressed Dr. Seymanski's and Dr. Lysak's evaluations in the RFC assessment. (Dkt. 8 at 32, 34.)

### 3. Psychological Support

Third, Dr. Knopes determined that Petitioner "will require individual psychological support should she begin new and/or intensive training or vocational placement," further noting that counseling "should be behavioral, providing concrete suggestions for social problems solving, and rehabilitation techniques to remediate above cognitive issues." (Dkt. 8 at 469.) Petitioner asserts that this part of Dr. Knopes's

opinion was not adopted into the RFC. However, Dr. Knopes's statement is neither a diagnosis nor a statement of Petitioner's functional capacity, but rather a recommendation regarding the need for Petitioner to continue appropriate counseling should she begin new employment. Thus, the ALJ did not err by excluding this limitation from the RFC.

Finally, Petitioner argues that the ALJ failed to provide an explanation as to why Petitioner's limitations and requirements, discussed by Dr. Knopes, were not considered in the RFC. Generally, the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 (July 2, 1996). Here, the RFC assessment considered and addressed various medical source opinions, including those of Dr. Knopes. Because the RFC assessment did not conflict with Dr. Knopes's opinion, and was supported by substantial evidence in record as a whole, the Court finds no error.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is *AFFIRMED* and that the petition for review is *DISMISSED*.

Dated: **February 12, 2014**

Honorable Candy W. Dale
United States Magistrate Judge